# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# COLUMBUS DIVISION

| | |
|---|---|
| PT ADVENTURES, LLC, a Utah limited liability company,<br><br>    Plaintiff,<br>v.<br><br>SYNOVUS BANK, a Georgia banking corporation; and DOES 1 through 5, inclusive,<br><br>    Defendants. | CIVIL ACTION NO.<br><br>JURY DEMAND |

## COMPLAINT AND JURY DEMAND

Plaintiff PT ADVENTURES, LLC ("Plaintiff") files this Complaint against Defendant SYNOVUS BANK ("Defendant") and DOES 1-5, and alleges as follows:

### THE PARTIES, JURISDICTION AND VENUE

1. At all times relevant to this action, Plaintiff was organized under the laws of the State of Utah, with its principal place of business in Draper, Utah.

2. At all times relevant to this action, Defendant is a Georgia banking corporation and maintains its principal place of business in Columbus, Georgia.

3. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 in that there is diversity of citizenship among the parties and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest, costs, and attorney's fees.

4. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(1) because the Defendants reside there in the State of Georgia.

5. The true names and capacities, whether individual, plural, corporate, partnership, associate or otherwise of DOES 1 through 5, inclusive, are unknown to Plaintiff who therefore sues said defendants by such fictitious names. The full extent of the facts linking such fictitiously sued defendants is unknown to Plaintiff. Plaintiff is informed and believes, and based thereon alleges, that each of the defendants designated herein as a DOE was, and is, negligent, or in some other actionable manner, responsible for the events and happenings hereinafter referred to, and thereby negligently, or in some other actionable manner, legally and proximately caused the hereinafter described injuries and damages to Plaintiff. Plaintiff will hereafter seek leave of the Court to amend this Complaint to show the DOE defendants' true names and capacities after the same have been ascertained.

6. Plaintiff is informed and believes, and based thereon alleges that Defendants, including DOES 1 through 5, inclusive, were agents, servants employees, successors in interest, and/or joint venturers of their co-defendants, and were as such acting within the course, scope, and authority of said agency, employment and/or venture, and that each and every defendant, as aforesaid, when acting as a principal, was negligent in the selection of each and every other defendant as an agent, servant, employee, successor in interest, and/or joint venturer. Plaintiff is informed and believes, and based thereon alleges, that each of the defendants designated herein as DOE aided and abetted, conspired with and/or took part in and participated with each other Defendant in all matters referred to herein, and was in some manner responsible for the inquiries and losses suffered by Plaintiff.

## FACTUAL ALLEGATIONS

### Overview of the Parties and the Card Brand Rules

7. Plaintiff offers on-line education courses to its customers that provide instruction regarding the "inner workings" of the various stock and securities markets. No advice on how to invest ever is provided. Those interested in purchasing and participating in these on-line education courses learn about how the markets are structured, how trades are made, how to read a balance sheet, etc. Courses are structured for beginners to veterans in need of a refresher.

8. As Plaintiff exists solely on-line (it has no "brick and mortar" storefront), it must be able to accept card payments. To accept card payments, a business (commonly referred to as a "merchant" in the card payments industry) must first open a "merchant account" for payment processing services by entering into a "merchant agreement" with a member bank which is affiliated with Mastercard International Incorporated, Visa Incorporated, Discover Financial Services LLC, American Express, and/or other networks (collectively the "Card Brands".)

9. Such member banks have direct agreements with the Card Brands that enable them to process payments made by holders of debit and credit cards issued by the Card Brands to purchase goods and services from merchants that contract with such member banks for merchant services. This process is called "acquiring" and the banks are often referred to as "acquirers".

10. Acquirers, in turn, may contract with third party organizations, also known as "Third Party Agents" or "Member Service Providers" (hereinafter "MSPs"), to provide processing related services ("Program Services") to merchants under the acquirer's sponsorship with the Card Brands.

11. An acquirer's membership agreement with the Card Brands requires the acquiring bank to comply, and ensure the compliance of its MSPs, with Card Brand Rules. *See Owner- Operator Indep. Drivers Ass'n, Inc. v. Concord EFS Inc.*, 59

S.W.3d 63, 66 (Tenn. 2001) ("Only banks and other similar financial institutions may become members of the Visa and Mastercard associations. These banks enter into membership agreements with Visa and Mastercard; the agreements incorporate the rules and regulations of Visa and Mastercard and allow the member banks to provide credit card processing services.").

## The MATCH List

12.     As previously stated, part of the membership agreement that banks enter into with the Card Brands is the agreement to comply with the Card Brand Rules, and perhaps no more onerous a Card Brand Rule exists than the requirement that banks place merchants who they suspect have violated a Card Brand Rule on the Mastercard Alert to Control High risk (MATCH) list.

13.     The MATCH list is a comprehensive database created by Mastercard. Acquiring banks are required to reference the MATCH list to screen merchant applicants and determine the risk they pose to providing a merchant account.

14.     Placement on the MATCH list is akin to a "blacklist" in that for all intents and purposes it will serve to prohibit Acquirers from offering payment processing service for a period of five years from the date of placement on the list to a merchant who appears on it. For merchants such as Plaintiff who sell their services on-line, it is a "death sentence", as it precludes the merchant from accepting credit cards or debit cards as payment for its goods and services. As such, per the Card Brand Rules, MATCH placement is not to be utilized arbitrarily or capriciously.

15.     Mastercard Rule 11.1 (MATCH Overview) states that the "system is designed to provide acquirers with the opportunity to develop and review enhanced incremental risk information before entering into a Merchant Agreement. MATCH is a mandatory system for Mastercard Acquirers unless excused by Mastercard or prohibited by law."

16.     Mastercard Rule 11.2.2 (When to Add a Merchant to MATCH)

specifically mandates that:

> [i]f either the Acquirer or the Merchant acts to terminate the acquiring relationship (such as by giving notice of termination) and, at the time of that act, the Acquirer has reason to believe that a condition described in Table 11.4 exists, then the Acquirer must add the required information to MATCH within five calendar days of the earlier of either:
>
> a. A decision by the Acquirer to terminate the acquiring relationship, regardless of the effective date of the termination, or
>
> b. Receipt by the Acquirer of notice by or on behalf of the Merchant of a decision to terminate the acquiring relationship, regardless of the effective date of the termination.

Acquirers must act diligently, reasonably, and in good faith to comply with MATCH system requirements.

17. Review of the MATCH Rule 11.2.2 reflects that there must be the termination of an acquiring relationship between an acquiring bank and a merchant, and at the time of that act the acquirer must have reason to believe that a condition violative of the Card Brand Rules exists.

18. No relationship of any kind has ever existed between Plaintiff and Defendant, yet on information and belief, Defendant has placed Plaintiff on the MATCH list, and has refused to provide any explanation as to why.

19. What is apparent however is that the owner of Plaintiff, Francisco Story, is the son of David Story, who had previously brought his own cause of action against Defendant for an alleged unwarranted MATCH placement of his own. On information and belief, Defendant has now placed Francisco Story's business on the MATCH list, in retaliation for David Story bringing a cause of action against Defendant.

20. Plaintiff has no processing relationship of any kind with Defendant, so how Defendant could be in possession of any information that suggests Plaintiff is in violation of any Card Brand Rules is unknown, and Defendant's unwillingness to discuss the subject makes the instant litigation necessary.

## CLAIMS FOR RELIEF
### FIRST CAUSE OF ACTION
**(Declaratory Relief)**

21. Plaintiff repeats each and every allegation as set forth above herein.

22. An actual, substantive controversy exists between Plaintiff and Synovus Bank concerning whether Synovus Bank has the legal right to facilitate a MATCH placement against Plaintiff.

23. Plaintiff and Synovus Bank are interested parties to this action because Synovus Bank took the action that placed Plaintiff on the MATCH list.

24. This actual, substantive controversy warrants the immediate issuance of a declaratory judgment pursuant to 28 USC §2201 because Plaintiff seeks a determination concerning the scope and extent of their rights and obligations as defined by the Card Brand Rules as they pertain to the MATCH list, including that Synovus Bank is obligated to take any and all actions necessary to assist with removal of Plaintiff from the MATCH list.

25. Plaintiff seeks a declaration from the Court that Synovus Bank's reporting to MATCH authorities that Plaintiff had engaged in conduct warranting placement on the MATCH list was in error, wrongful, and should be immediately corrected by Synovus Bank with the MATCH operators and that its prior notification formerly rescinded. Plaintiff further requests a declaration affirming Plaintiff's right to fair treatment, due process, and the opportunity to rectify any alleged wrongdoing.

## SECOND CAUSE OF ACTION
## (Tortious Interference with Prospective Business Advantage)

26.     Plaintiff repeats each and every allegation in Paragraphs 1 through 20 above as if set forth above herein.

27.     Plaintiff offers on-line education courses to its customers that provide instruction regarding the "inner workings" of the various stock and securities markets. No advice on how to invest is ever provided. Those interested in purchasing and participating in these on-line education courses learn about how the markets are structured, how trades are made, how to read a balance sheet, etc. Courses are structured for beginners to veterans in need of a refresher.

28.     Synovus Bank was aware from litigation initiated with Plaintiff's father, David Story, that if Synovus Bank facilitated placement of Plaintiff on the MATCH list, Plaintiff would no longer be able to process credit card payments and would therefore be unable to do business and would lose all current and prospective business relationships as a result of MATCH list placement. Synovus Bank is well aware of the fact that a MATCH list placement often prevents merchants such as Plaintiffs from obtaining cost-effective credit-card processing for a duration of five years.

29.     Therefore, by recommending Plaintiff to the MATCH list and cancelling their account, despite the absence of any processing relationship whatsoever, Synovus Bank intentionally interfered with Plaintiff's prospective business relationships.

30.     Plaintiff continues to incur damages as a direct result of Synovus Bank's wrongful termination of credit card processing services to Plaintiff and the wrongful placement of Plaintiff on the MATCH list.

31. Because Plaintiff is now on the MATCH list, Plaintiff is effectively unable to obtain cost-effective credit card processing services for the foreseeable future because it serves to prohibit Acquirers from offering payment processing services for a period of five years from the date of placement on the list.

32. As a direct result of Plaintiffs MATCH list placement, Plaintiffs' retail has had a cessation of profits in an amount in excess of $75,000 that will be proven at trial.

33. Defendants' actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. Accordingly Plaintiff is entitled to an award of punitive damages in the amount of $250,000, not as compensation but solely to punish, penalize, or deter Defendants.

## THIRD CAUSE OF ACTION
### (Expenses of Litigation Under OCGA §13-6-11)

34. Plaintiff repeats each and every allegation in Paragraphs 1 through 20 above as if set forth above herein.

35. Defendants have acted in bad faith in the transactions giving rise to these claims. If Defendants deny any material allegation herein, they will be stubbornly litigious and will cause the Plaintiff unnecessary trouble and expense. Accordingly, Defendants are liable for Plaintiff's expenses of this litigation including attorney's fees, under OCGA §13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff PT ADVENTURES, LLC respectfully requests the following relief from the court:

   a)   Declaratory Relief: A declaration that the Synovus Bank's facilitation

of placement of Plaintiffs on the MATCH list was wrongful and should be immediately rescinded.

b) Injunctive Relief: An injunction preventing Synovus Bank from continuing to facilitate the listing of Plaintiffs on the MATCH list and ordering Synovus Bank to notify all relevant parties, including the acquiring bank and card networks, that Plaintiff was wrongfully placed on the MATCH list and should be removed from the list.

c) Damages: Compensation in an amount exceeding $75,000 exclusive of costs and interest for the financial losses, including lost business opportunities and reputational harm, suffered by the Plaintiff as a result of Synovus Bank's wrongful reporting of Plaintiff's activities to those operating the MATCH list and Synovus Bank's facilitation of Plaintiff's placement on the MATCH list, together with punitive damages in the amount of $250,000.

d) Attorney's Fees and Costs: An award of Plaintiff's expenses of this litigation, including attorney's fees and costs incurred by Plaintiffs, pursuant to OCGA §13-6-11.

e) Trial by a jury on all issues so triable.

f) Such other and further relief as is necessary to right the wrongs complained of in this action.

                              LEAD COUNSEL

                              James C. Huber
                              jhuber@attorneygl.com
                              Bryce M. Van De Moere
                              bvandemoere@attorneygl.com
                              GLOBAL LEGAL LAW FIRM
                              322 Encinitas Blvd, Suite 200
                              Encinitas, CA 92024
                              (888) 846-8901

-10-

                                      /s/ *James C. Morton*

                                      James C. Morton
                                      Georgia Bar No. 526025

James C. Morton, LLC
Suite 1510, Two Midtown Plaza
1349 West Peachtree Street
Atlanta, Georgia 30309
(404) 966-5133
james@morton-law.com

                                      *Attorneys for Plaintiff*
                                      *PT ADVENTURES, LLC*